UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHEN KENJI LE BROCQ,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>NEJLA KASSANDRA LANE and  )<br>LANE LEGAL SERVICES, P.C.,  )<br>  )<br>  Defendants.  )<br>_____ ) | Civil Action No. 3:16-cv-02832-D<br><br>Honorable Judge Sidney A. Fitzwater Presiding |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AT LAW**

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss at Law, brought pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

**I.   INTRODUCTION**

Plaintiff Stephen Kenji Le Brocq ("Le Brocq" or "Plaintiff") filed this instant lawsuit against Nejla Kassandra Lane ("Lane") and Lane Legal Services, P.C. ("LLS") (collectively "Defendants") for violating Title 26 U.S.C. § 7437 by willfully filing a fraudulent 1099- MISC form with the Internal Revenue Service ("IRS"). After Plaintiff was served with a Notice of Deficiency on July 25, 2016 from the IRS, he sought legal counsel in Texas that specializes in Tax Law as to how he should challenge the IRS' determination from Defendants' fraudulent filings. Plaintiff was advised to file a Petition with the United States Tax Court to challenge the fraudulent amounts and to file this suit. That is exactly what he did.

Due to Defendants' fraudulent filings, the IRS is requesting more than $11,000.00 in taxes, fees, and penalties from Plaintiff. Defendants attempt to relate their egregious and illegal conduct to an unrelated suit that they filed in the Northern District of Illinois. A lawsuit which has multiple Fed. R. Civ. P. 11 motions for sanctions pending, along with counter claims for fraud and breach of contract. A lawsuit that deals with entirely different issues. Defendants were unsuccessful at their attempts to dismiss the fraud and

breach of contract claims against them. *See Lane v. Le Brocq,* 2016 U.S. Dist. LEXIS 142024 (N.D. Ill. October 12, 2016). All claims that relate to Lane and Le Brocq's previous business relationship.

Indeed, the instant claim arises from when Lane (who maintained a law office in Austin, Texas and is admitted before the Texas Bar) decided to fraudulently amend Le Brocq's 2014 1099-MISC form when he left Chicago, Illinois to open his law practice in Dallas, Texas. Lane sought out Le Brocq in Texas and caused to be delivered, fraudulent documents to Plaintiff in the Northern District of Texas. This case has nothing to do with a foreign case that has been pending for more than a year, with entirely separate issues and facts. Instead, it has everything to do with non-residents of Texas fabricating and sending fraudulent government tax documents to the Northern District of Texas. This case is proper in the Northern District of Texas.

## II.   THE SALIENT FACTS

Le Brocq and Lane are both licensed attorneys admitted to practice in Texas and Illinois. From May 25, 2013 through May 9, 2015, Plaintiff was employed with Defendants starting as a law clerk and ending as a junior partner in a small boutique law firm in Chicago, Illinois. While in Chicago, in January of 2015, Plaintiff received a 1099-MISC form for $58,998.00 from Defendants. This amount reflects the total income received by Plaintiff for work provided to Defendants in fiscal 2014. Le Brocq used the 1099 drafted by Lane to file his taxes with the IRS and with the Illinois Department of Revenue, respectively. He paid his state and federal taxes in full before the April deadline in 2015.

During the early months of 2015, Le Brocq and Lane contemplated opening a law firm in Dallas, Texas because Le Brocq grew up in North Texas and Lane went to college in South Texas and did not like Chicago's climate, taxes, and high-price of living. At first, Lane and Le Brocq had agreed that Le Brocq would work part-time in their Texas office, and full-time in their Illinois office. Lane later changed her mind and demanded Le Brocq remain in Chicago. Le Brocq took issue with this and Lane gave her blessing for Le Brocq to leave and move back to Texas. But after Le Brocq terminated his employment with Lane,

Lane went on a crusade of vilification, posting defamatory statuses on social media, making false reports to law enforcement and administrative agencies (including the State Bar of Texas and the Illinois Attorney Registration and Disciplinary Commission). All frivolous complaints and reports have been investigated by the respective agencies and dismissed—save an action pending in the Northern District of Illinois (hereinafter "the Illinois action").

In the Illinois action, Defendants allege (albeit, falsely), that Plaintiff violated Federal Communications law, stole property (that he owns and has receipts for), and various other meritless claims. Perhaps the most dubious claim is that nearly all monies Le Brocq received during his employment were "future-advancements" even though paid pursuant to contract. Lane also forged exhibits in the Illinois action, confirmed by one of her 4 attorneys (all of whom withdrew from the Illinois action). Lane also confirmed she forged exhibits to sworn pleadings in the Illinois action during her video-taped deposition. Lane has amended her claims and changed material facts to survive dismissal and has engaged in intolerable conduct, including uttering profanity constantly during her deposition (on the record), to the point where her previous lawyer screamed at Lane and then asked the court for permission to withdraw from the Illinois action. Lane is again *pro se.*

Plaintiff presents this Court with the above-information because it is necessary insofar as Defendants attempt to portray the previous actions in foreign jurisdictions, very differently. Plaintiff is not the individual that Defendants' motion reflects. At no point did Plaintiff attempt to avoid service, and he agreed to voluntarily dismiss his State Action (it was not involuntarily dismissed). The Illinois action contains all Illinois-related claims for actions that allegedly occurred in Illinois. The fraudulent documents sent to Le Brocq in the Northern District of Texas have nothing to do with the Illinois action. This case should remain in Texas. Defendants purposefully directed their conduct to the Northern District of Texas by falsifying federal tax instruments knowing what impact it would have on Le Brocq and sending such documents to Le Brocq while residing and practicing law in the Northern District of Texas. Defendants did

this in retaliation against Le Brocq for leaving employment in Chicago, returning to Dallas. Defendants knew that this conduct would impact Le Brocq's life and business in the Northern District of Texas.

The Illinois action has been pending for more than a year and discovery is to close shortly (after multiple extensions requested by Lane). Le Brocq was not informed of the tax deficiency until <u>July of 2016</u>. Defendants purposefully directed their conduct to the Northern District of Texas. It is no coincidence that Lane decided to amend the fraudulent tax filings for a *prior tax* year, just months after Le Brocq made his move to the Northern District of Texas and did nothing for more than a year while Le Brocq resided in the Northern District of Illinois. Defendants wanted to interfere Le Brocq's life and business in Texas and accordingly, the Northern District of Texas should resolve this matter.

### III.   LEGAL STANDARDS

Obtaining personal jurisdiction over a non-resident of a state is constitutionally permissible if the nonresident "purposefully availed himself of the benefits and protections" of Texas by establishing "minimum contacts" with Texas such that the defendant could "reasonably anticipate[] being hauled into court in the forum state" and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1987). Indeed, even if the parties formed their relationship elsewhere, a single act by the defendant directed toward the forum state that gives rise to a cause of action by the plaintiff can support a finding of minimum contacts." *See Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984).

The burden to demonstrate why venue is improper and why the forum should be changed lies with the movant, or in this case, the Defendant. *See Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir. 1966). Generally, there is a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. *Shexnider v. McDermott Intern, Inc.,* 217 F.2d 1159, 1163 (5th Cir.), *cert. denied,* 484 U.S. 977, 98 L. Ed. 2d 486, 108 S. Ct. 488 (1987).

There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in supports of its claims that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Capital Parks, Inc. V. Southeastern Advertising and Sales System, Inc.,* 30 F.3d 627, 629 (5th Cir 1994).

Under the first-to-file doctrine, a court's power to stay proceedings is appropriate in rare circumstances, requiring a party to show that the "current litigation is duplicative of litigation in another court." *Amini Innovation Corp v. Classic World Imports, Inc.* No., 2005 U.S. Dist. LEXIS 406 (N.D. Tex. Jan 12. 2005). Thus, the cases in each district "should be more than merely related". *Buckalew v. Celanese, Ltd.,* No. Civ. A. G-05-315, 2005 WL 2266619, *3 (S.D. Tex. Sept. 16, 2005).

IV.  ARGUMENT

**A. The Northern District of Texas Maintains Specific Personal Jurisdiction Over Defendants**

In *Lewis v. Fresne,* the Fifth Circuit found that alleged false statements made during a single phone call and the mailing of materials alleged to be fraudulent were enough to establish specific personal jurisdictional over an out-of-state defendant. 252 F. 3d 352, 358-59 (5th Cir. 2001). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Id*. at 358 (citing *Brown v. Flowers Indus.,* 688 F.2d 328, 332-33) (5th Cir. 1986) (holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).

In the case at bar, Defendants fabricated and sent a fraudulent 1099-MISC form to Plaintiff in the Northern District of Texas. Plaintiff now must defend his suit against the IRS in the Northern District of Texas. Just like in *Lewis* and *Brown,* the singular act by Defendants—mailing a fraudulent instrument to the Northern District of Texas, confers personal jurisdiction because the specific act gives rise to the claim being asserted—i.e. the fraudulent tax document which serves as the sole basis for Plaintiff's claim.

Furthermore, IRS tax returns are not sent or processed anywhere in Illinois. Rather, they are sent to both Fresno, California and Cincinnati, Ohio. Defendants intentionally fabricated an old 1099 and directed it towards Texas. Defendants did this because they wanted to disturb Plaintiff's life and business when he left Chicago, Illinois to move and open a law firm in Dallas, Texas. Defendants are unequivocally subject to personal jurisdiction here. The fabricated 1099 has no ties to Illinois whatsoever. There is no reason why Illinois should be bothered by conduct that was directed to a jurisdiction over a thousand miles away.

### B. The Northern District of Texas is the Proper Venue for This Cause

Under 28 U.S.C. § 1391(b), a civil action may be brought both where a substantial part of the events or omissions giving rise to the cause of action occurred, or where any defendant is subject to personal jurisdiction. As stated *supra,* the events giving rise to this claim occurred in the Northern District of Texas—the transmission of the fraudulent 1099 along with the proceedings before the Dallas Division of the United States Tax Court all are present in this judicial district. Moreover, Defendants are subject to personal jurisdiction in this district based on Defendants' intentional actions and thus, venue is proper in multiple respects. The Northern District of Illinois maintains 0 ties to Plaintiff—or this action – other than wholly unrelated claims in the Illinois action that arose prior to this filing of this instant suit.

### C. A Rule 12(b)(6) Motion is Improper to Address Compulsory Counter Claims.

As stated above, Rule 12(b)(6) motions are used when, assuming all facts are true in the light most favorable to the non-moving party, no claims for which relief may be granted exist as a matter of law. Defendants argue that the claim at bar is a "compulsory counterclaim" such that it necessarily had to be included in the Illinois action. First, Plaintiff takes the position that the claim is independent of all other claims and thus, a permissive counterclaim. A claim which is proper in Texas and not Illinois. There is no overlap—factually, or otherwise—regarding violations of Federal Communication laws, conversion, breach of contract, fraud in the inducement, etc… to the fraudulent filing of a tax instrument with the IRS. Conduct that was intended to harm Le Brocq *after* he moved from Chicago. Second, even if the claim was

compulsory, the proper mechanism to address such issue is through an affirmative defense, not a Rule 12(b)(6) motion. Lastly, Plaintiff answered and filed his counterclaims in the Illinois action *before* having received the certified Notice of Deficiency from the IRS. Le Brocq could not possibly anticipate damages and his current claim until the IRS gave him notice demanding payment, including the amounts due, the interest and penalties, and reasons therefor. Prior to receiving any notice by the IRS, Plaintiff's claim would be purely speculative as the cause of action would not yet be ripe. Accordingly, this Court should deny Defendants' Fed. R. Civ. P. 12(b)(6) motion for dismissal.

### D.     The First-to-File Doctrine Does Not Apply In The Case At Bar

Defendants argue that because they filed their unrelated claims first in the Northern District of Illinois, that this case should be heard there. But there is no overlap whatsoever of the claims to make such cases related. The claim brought before this court is simple —did Defendants *fabricate a tax document* and if so, *did Plaintiff suffer damages as a result thereof*? The Illinois action on the other hand, presents unique questions regarding Lane and Le Brocq's relationship while working together in Chicago, Illinois. In the instant case, there are no allegations (besides background facts) regarding activities that occurred while Lane and Le Brocq resided or worked together in Illinois. To the contrary, the actions alleged all relate to conduct *after* Le Brocq left Chicago and moved to Dallas. Defendants' actions did not take place during any employment relationship or during any time at which Plaintiff resided in Illinois.  This case is not about Lane and Le Brocq's employment relationship while in Chicago. Rather, this case is about Defendants' fraudulent tax filings made after that relationship ended and while Le Brocq was a domiciliary of Texas. All actions purposefully made for the sole purpose of attempting to interfere with Le Brocq's life and law practice in Dallas, Texas. As stated in *Buckalew,* the cases "should be more than merely related." *Id.* Here, the cases are not even remotely related and therefore, this court should deny Defendants' motion made under the first-to-file doctrine.

**E**.       **This Claim Was Made In Good Faith and Plaintiff Should Not be Sanctioned.**

This lawsuit was filed in good faith and not for the purpose of harassment or in violation of Rule 11. When Lane filed her 2015 taxes, she swore under penalties of perjury to the IRS that Le Brocq was paid $58,998.00. Then, after Le Brocq left from Chicago to Dallas, Lane made it her mission to do everything possible to attempt to destroy Le Brocq's career and livelihood. Lane defrauded Le Brocq and the United States government by adding an extra $25,642.00 of "income" to Le Brocq's 1099-MISC (9 months later), now telling the IRS that Le Brocq allegedly was paid $84,640.00. Lane's actions are textbook fraud. Fraud not only against Le Brocq but also against the federal government.

The moment this action became ripe when Le Brocq was sent the Notice by the IRS due to Lane's conduct, he consulted legal counsel, who advised him to file this instant lawsuit and to file a Petition in the United States Tax Court. The Illinois action is wholly unrelated and stems from the parties' former employment relationship. This case deals with tax fraud against the government. When Le Brocq received the notice by the IRS, he already filed his counterclaims in the Illinois action and discovery was to close very shortly. The actions Lane took were purposeful and directed to Le Brocq to destroy his life and business in the Northern District of Texas. The action is proper here.

Lane has multiple Rule 11 motions pending against her in the Illinois action. Lane has engaged in behavior so egregious that the Honorable Chief Judge Ruben Castillo of the Northern District of Illinois has ordered Lane to sit for another 4-hour deposition because she obstructed it. The same judge has also ordered Lane not to talk to continue to reach out to Le Brocq's family. As this response is being drafted, Lane has been ordered to respond to yet another motion for sanctions in the Illinois action. Furthermore, Lane has been warned in written opinions the consequences of filing frivolous instruments, forging documents, etc…

When Le Brocq left employment with Lane, she told many people that she would destroy Le Brocq's life. It started by the false reports to several administrative agencies. They have all have been

dismissed after Le Brocq retained counsel in those actions. Lane then filed a frivolous federal lawsuit in Illinois and Le Brocq has diligently handled it with his attorney and has filed counterclaims that directly relate to the parties' former business relationship. These claims include fraud and breach of contract. The instant matter occurred long after Le Brocq left Chicago to Dallas. The claims in the Illinois action relate to actions alleged to have occurred up until May 9, 2015. This new case did not become ripe until July of 2016—more than a year after all actions alleged in the Illinois action.

Lane has engaged in reprehensible conduct and it is true that Le Brocq has warned Lane and other attorneys that were working on the Illinois action that he will seek to protect his rights should they continue to proceed with a case that wholly lacks any merit. Every attorney that is not employed by Lane has withdrawn or otherwise, dropped the case. They realize that it is frivolous. None of this changes the fact that Lane has violated 26 U.S.C. § 7434. This case has also been sent to the Chief Counsel for the Internal Revenue Service, and is being used in connection with Le Brocq's petition before the United States Tax Court, Dallas Division. This case was filed in Dallas because that is where it belongs and the interests of justice require that Lane answer for her actions that were made in a blatant attempt to sabotage a resident of the Northern District of Texas and his law practice.

## V.   CONCLUSION

WHEREFORE, PRESMISES CONSIDERED, Plaintiff STEPHEN KENJI LE BROCQ prays that this Honorable Court DENY Defendants' Motion to Dismiss at Law, and for all other relief that he may be justly entitled

Respectfully Submitted,

/s/ Stephen Le Brocq
Stephen Le Brocq, *pro se*
Plaza of Josey Ranch
2150 North Josey Lane, Suite 227
Carrollton, Texas 75006
P: (469) 930-4385 F: (866) 820-6005
E: stephen@lebrocqlawgroup.com

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon all counsel of record via the CM/ECF system on January 8, 2017, which will send notification of such filing to all attorneys of record.

/s/ Stephen Le Brocq